## MAXWELL v. WILMINGTON DENTAL MANUF'G CO.

(Circuit Court, D. Delaware. December 28, 1896.)

### No. 145.

1. MORTGAGES—FUTURE-ACQUIRED PROPERTY—INTENTION.

That a mortgage may cover future-acquired property of the mortgagor, an unmistakable intention to that effect must appear from the face of the instrument.

2. SAME—PROPERTY PURCHASED WITH PROCEEDS OF MORTGAGE.

A manufacturing company, to raise funds with which to buy the plant and business of another company, gave a mortgage on certain described land and all buildings, machinery, and other property generally, "thereon or elsewhere erected or located, the whole constituting the plant of the said mortgagor." *Held*, that the mortgage covered only the property owned by the company at the date of the mortgage.

3. SAME—MANUFACTURING PLANT—PROPERTY NOT INCLUDED IN.

Such a mortgage will not cover property not a part of the "plant" of the mortgagor, but forming an independent business in another city, though owned by the mortgagor at the date of the mortgage.

H. H. Ward and Andrew C. Gray, for sundry creditors.
William S. Hilles and Benjamin Nields, for bondholders.
J. H. Hoffecker, Jr., and Robert D. Maxwell, for receiver.

WALES, District Judge. On July 25, 1893, the defendant company was by a decree of this court declared to be insolvent, and a receiver was appointed of all the property, wheresoever the same or any part thereof might be situated, with all the powers, rights, and duties of receivers in like cases. Ancillary receivers were appointed in the District of Columbia, in the Eastern district of Pennsylvania, and in the Southern district of New York. The receiver appointed by this court has in hand for distribution the sum of $49,434.57, being the proceeds of the sales of all the personal property which was owned by the company in Washington City, in Philadelphia, and in New York. A petition has been presented to the court, by certain holders of the mortgage bonds of the company, which were issued prior to the appointment of the receiver, asking that they

may be decreed to have a prior lien upon the fund, and that they shall be preferred in its distribution of all other general creditors. The petition is made, also, in behalf of all other holders of such bonds as may come in and contribute to the costs of this proceeding.

The validity of the bonds is not in dispute. The question debated by counsel is whether the mortgage given to trustees to secure their payment is a lien on the property of the company which was acquired by it after the date of that instrument. The petition states that, on the 17th day of May, 1890, at a special meeting of the stockholders of the company, it was resolved, "in order to provide the necessary funds for the purchase of the business, stock, and plant of the American Dental Manufacturing Company of New York City, that a mortgage should be made and executed by the proper officers of the company for fifty-six thousand dollars, payable within twenty years from the first day of July, eighteen hundred and ninety, covering the real estate, buildings, improvements, machinery, appurtenances, manufactured and unmanufactured stock, moulds, platinum. and property generally of said company, situated, located, and being in the city of Wilmington, county and state aforesaid, and thereby securing the payment of one hundred and thirteen bonds," etc. Acting under authority given to them by this resolution, the officers of the company, on the 24th day of June, 1890, executed and delivered to the trustees, therein named, a mortgage on certain real estate and personal property, mentioned and described, as follows:

"All that certain lot of land, with the buildings and improvements thereon erected, situate in the city of Wilmington, aforesaid, and more particularly bounded and described [and then follows a description of the real estate by metes and bounds], together with all and singular the buildings, improvements, machinery, appurtenances, manufactured and unmanufactured stock, moulds, platinum, and other property generally, *thereon or elsewhere erected or located, the whole constituting the plant of the said mortgagor.*"

This description of the mortgaged properties varies from that contained in the stockholders' resolution by the omission of the words "situated, * * * located, and being in the city of Wilmington," and by the interpolation of the italicized words in the body of the mortgage. This departure from the instructions given in the resolution has no direct bearing on the main question in relation to after-acquired property, but it shows that the officers of the company went beyond the power conferred on them by the resolution, which is fully set forth in the recital of the mortgage, by including or attempting to include property outside of the city of Wilmington. The mortgage was on record, and the purchasers of the bonds could have had full notice of its contents. The appointment of a receiver did not displace or impair prior bona fide existing liens on the company's property in Wilmington. The lien on the mortgage on that property remains secure. The bonds only represent a debt. They create no lien.

On the principal question of what is necessary to make an incumbrance on after-acquired property, there is no doubt that, in equity, such an incumbrance can be made by a mortgage, or by an agree-

ment between parties, if express terms are used for that purpose, or if it clearly appears, from the language of the instrument, and from the circumstances of the particular case, that such was the intention of the parties. At law a person cannot convey that which he does not own; but it is now well settled that a court of chancery will give effect to a contract to convey future-acquired property, whether real or personal. The leading authority on the subject in this country is that of Mitchell v. Winslow, 2 Story, 630, Fed. Cas. No. 9,673. There a partnership engaged in the manufacture of cutlery executed a mortgage of all "the machinery in and belonging to the cutlery manufactory in Westbrook, with all the tools of every kind thereunto belonging, together with all the tools and machinery for the use of the said manufactory which they might at any time purchase, for four years from the date of the mortgage, and also all the stock which they might manufacture or purchase during said four years." In his opinion, the eminent Judge Story said:

> "It seems to me a clear result of all the authorities that, wherever the parties, by their contract, intend to create a positive lien or charge either upon real or personal property, whether then owned by the assignor or contractor, or not, or, if personal property, whether it is then in esse or not, it attaches in equity as a lien or charge upon the particular property, as soon as the assignor or contractor acquires a title thereto."

In Holroyd v. Marshall, 10 H. L. Cas. 191, it was held that:

> "If a mortgagor mortgage property, real or personal, of which he is not possessed at the time, and he receives the consideration for the contract, and afterwards becomes possessed of the property answering the description in the contract, there is no doubt that a court of equity would compel him to perform the contract, and that the contract would, in equity, transfer the beneficial interest to the mortgagees immediately on the property being acquired."

A number of additional authorities were cited by counsel for the petitioners, but all of them are cases where the mortgage contained the after-acquired property clause in express terms, or where there appeared upon the face of the instrument the manifest intention of the parties to charge such property, which is also described in the mortgage with sufficient accuracy for the application of the equitable doctrine of specific performance. In Railroad Co. v. Hamilton, 134 U. S. 296, 10 Sup. Ct. 546, the mortgage included real and personal property "now or at any time hereafter owned or acquired" by the mortgagor. Similar phrases are used in many other cases, —e. g. "or which may be acquired during the existence of this security;" "then owned or subsequently acquired;" "which is now owned or shall hereafter be acquired;" "now held or hereafter to be acquired." Hammock v. Loan Co., 105 U. S. 77; Parker v. Railroad Co., 33 Fed. 693; Railroad Co. v. Woelpper, 64 Pa. St. 366. It may not be necessary to describe specifically the future property which it is intended the mortgage shall cover, but it is essential that the mortgage should show that it is intended to apply to after-acquired property of the mortgagor. It thus appears that the unbroken current of authority is all in one direction, in requiring express words, or an unmistakable intention, to be derived from the face of the mortgage, to embrace after-acquired property.

Counsel for the petitioners argued that the word "plant," inserted in the dental company's mortgage, covers every description of property which belonged to the company, on June 24, 1890, or at any subsequent time, and in support of this contention cited the case of In re Panama, N. Z. & A. Royal Mail Co., 5 Ch. App. 318. The facts in that case were these: The company owned a fleet of 15 steam vessels, employed in the company's trade between England, Panama, and Australia, and, being desirous of borrowing £100,000, issued debentures, payable at terms not exceeding seven years, charging the "undertaking and all sums of money arising therefrom, and all the estate, right, title, and interest of the company therein," with the repayment of the borrowed money. Before the debentures became due, an order was made to wind up the company. The ships were sold, and the debenture holders claimed a charge upon the proceeds of the sale in priority to the general creditors. On appeal from the vice chancellor to the court of appeals, it was held by Gifford, L. J., that:

"In this particular case, and having regard to this particular company, the word 'undertaking' had reference to all property of the company, not only which existed at the date of the debenture, but which might afterwards become the property of the company."

Webster defines the word "plant" to be "the fixtures and tools necessary to carry on any trade or mechanical business (local)"; "undertaking" to be "any business, work, or project which a person engages in or attempts to perform; an enterprise." "Plant" is defined by Worcester to be "the machinery, apparatus, or fixtures by which a business is carried on"; "undertaking," as "attempt, enterprise, engagement." It will be observed that the two words are not equivalents, and do not assimilate. One signifies a business or enterprise, and the other the fixtures and tools by which a business or enterprise is carried on. . The debentures charged, not only the property of the Panama Company, but also its business and all sums of money arising therefrom. The court, in its decision, had regard to the particular case before it, and confined its inquiry to what was the subject-matter of the charge in the debentures.

The intention of the stockholders of the dental company, as expressed in the resolution, was to mortgage the property of the company in Wilmington, and not that which it owned elsewhere, or should own thereafter. Even conceding that property elsewhere is covered by the mortgage, there are no expressions, terms, or language in the mortgage which, by the broadest interpretation, can be construed to apply to any other property than to that which was in existence and owned by the company on June 24, 1890. A portion of the Philadelphia property, it is true, was owned by the company when and before the mortgage was given, but it was not a part of, nor did it belong to, the company's "plant." It consisted of a printing press and the subscription list of a newspaper, called "Items of Interest," a monthly publication which was devoted to the interests of dentistry in general. It seems to have been an independent business or enterprise, and was not directly connected with the

principal concern.    At all events, it was not included in the resolution of the stockholders' meeting.

After a careful examination of the law, and assisted by the very able arguments of the counsel of the respective parties, I have come to the conclusion that the petitioning bondholders are not entitled to a priority over the general creditors to this fund, and their petition must, therefore, be dismissed.    This decision does not, as already said, affect the lien of the mortgage on the Wilmington property, on which it is the first and paramount incumbrance, nor, perhaps, will it entail any very serious loss to the petitioners. Of the whole number of bonds issued by the dental company, $14,-000 had been redeemed and retired prior to the appointment of the receiver, leaving bonds outstanding and unpaid to the amount of $41,600; and it is not at all improbable that, before the reorganization of the company, provision may be made for their ultimate payment in full.