**NELSON v. DOWNTAIN et al.   (No. 452–3958.)**

(Commission of Appeals of Texas. Section B. Oct. 15, 1924.)

**1. Reformation of instruments ⬯41—Pleadings held not to raise issue of mutual mistake in suit to forfeit lease; "plant."**

Pleadings, in suit seeking to forfeit lease, alleging omission of provision for forfeiture for failure to begin construction of "plant" for mining and operating limestone rock, *held* not to raise issue of mutual mistake in failure to insert provision for forfeiture on failure to begin construction of rock crusher; a "plant" being machinery, tools, etc., necessary to carry on any trade or mechanical business or any mechanical operation or process.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Plant.]

**2. Landlord and tenant ⬯37—All parts of contract to be considered.**

Though lease may have been arrived at by piecemeal, when final agreement was signed, including additions made by interlineation, all parts ceased to have any separate existence, and were consolidated into one unified whole.

**3. Alteration of instruments ⬯12—Interlineations, when not challenged as fraudulent, are parts of contract.**

Where alteration or interlineation appears in contract and is alleged to have been made fraudulently or without knowledge or consent of party, courts inquire most freely, not because of mere fact of interlineation, but because it must first inquire whether writing is in fact contract of parties; but, where interlineations are not challenged, they are parts of contract.

**4. Landlord and tenant ⬯103(1)—Leases of property for quarries not forfeited except where language clearly calls therefor.**

Leases of property for purposes of quarries should not be forfeited without authority therefor in lease in plain and clear language whose unequivocal character render its exercise fair and rightful.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Suit by L. C. Downtain and others against A. L. Nelson. From a judgment of the Court of Civil Appeals (249 S. W. 241) affirming a judgment for plaintiffs, defendant brings error. Reversed and rendered.

---

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

W. F. Kelly, of Fort Worth, and Gilvie Hubbard, of Eastland, for plaintiff in error.

Scott, Brelsford, Funderburk & Ferrell and R. B. Truly, all of Eastland, for defendants in error.

HAMILTON, J. Defendants in error brought this suit against Nelson in the form of trespass to try title and, in a second count, sought to enforce a forfeiture provision of the lease contract under which Nelson held the land.

The original contract is in the transcript and is as follows, omitting nothing:

"The State of Texas, County of Eastland.

"Witness this agreement this day made and entered into by and between L. C. Downtain and his son, E. C. Downtain, jointly, lessors, and A. L. Nelson, lessee, parties residing in Eastland county, Texas:

"Lessors, for and in consideration of one dollar cash in hand paid, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained, on the part of lessee to be paid, kept and performed, have granted, demised, leased and let, and do by these presents grant, demise, lease and let unto the said lessee, for the sole and only purpose of mining and operating *for and marketing of* such quantities of limestone rock *sand and gravel as may be found* in and upon all that certain tract of land situated in the county of Eastland, state of Texas, described as follows to wit: The south half of the southwest quarter of the John House survey, and in and upon all lands owned by the said lessors in sections one (1) and two (2) of block six (6) of the East Texas Railway Survey, said lands adjoining the townsite of Eastland, directly eastward.

"It is agreed that this lease shall remain in force as long hereafter as lessee or his assigns shall produce from said lands crushed and screened limestone rock *sand, gravel* and quicklime, *or either of them* without cessation of operation for more than ninety days at any time after beginning such operation, and said operation, or substantial preparation therefor, shall be begun upon said land by lessee not later than sixty days from this date.

"It is agreed and understood that lessee shall at no time during the term of this lease occupy at any one time more than twenty-*five* (25) acres of said lands by way of quarry *gravel pits, sand pits* and necessary plants, buildings and machinery necessary to the operation thereof, but it is expressly understood that said 25 acres so to be occupied shall be such as may be chosen by the lessee out of the aforesaid lands, and lessee shall have the right, providing the limestone found upon the first or other location made by lessee shall not be deemed of good and sufficient quality or quantity, to change such location of plant and quarry to such other and more suited portion of said lands as in lessee's opinion shall be deemed advisable; provided, however, that any such acreage *or combined acreages* selected and occupied by lessee shall be so fenced or inclosed as not to interfere with the lessors' occupancy and use of the major portion of aforesaid lands for all other proper purposes.

"In consideration of the premises, the said lessee covenants and agrees to deliver or pay to lessors ten (10¢) cents for each cubic yard of limestone mined or quarried from said premises and by lessee disposed of on the market, as also for each cubic yard of such rock mined and burned into quicklime on said premises *and 50 cents per cubic yard for all sand and gravel removed and marketed therefrom,* and the books of lessee and his assigns shall be accessible to lessors for the purpose of computing the output of such marketed *crushed rock, sand, gravel and* burned limestone at all times, as also to have access to the quarries *and pits* at all times for the purposes of comparison by way of quantities of rock removed therefrom for such commercial purposes, said amounts per cubic yard to be so computed and paid by lessee or his assigns to lessors, or their assigns, at the end of each thirty (30) days run from the beginning of operations by lessee hereunder, it being agreed that such payment shall be made between the 1st and 10th days of each calendar month. *It is further agreed that in the event the market for above products shall advance above its present rate without proportionate advance of labor and other cost of production then and in that event lessee shall pay lessors added royalty in due proportion to added profits.*

"It is agreed and understood that lessee shall have the right to construct and erect any and all necessary machinery and buildings, trackage, etc., in and upon the aforesaid land as may be required for the proper and economic operation thereof, and lessee shall have the right at any time that he shall deem the industry contemplated hereunder to be unprofitable to remove from said premises all such machinery, equipment and buildings without hindrance from lessors.

"It is agreed and understood that the lessee shall have access by way of a sixty (60) foot roadway over and across the lands of lessors adjacent to the aforesaid to be selected acreage *or acreages* in two directions, to wit, northward from said plant *or plants* to the principal highway *running* eastward from the town of Eastland, as also westward from said plant to the east boundary of said town of Eastland, *as also connecting roadways between quarry and sand or gravel pits* such roadways to be selected by lessee in such manner as shall provide the most practical and direct outlets for the product of said plant; and it is agreed and understood that the lessee shall have the right to lay and maintain railway trackage upon *either* one of the aforesaid roadways at such time as lessee may deem the aforesaid industry in need thereof.

"It is agreed and understood that lessee shall have the right to build and maintain a water reservoir at such place on the aforesaid land of lessors as may be selected by lessee, and to use the water there collected, or water from any stream in or upon the aforesaid lands of lessors, together with the right to lay and maintain all necessary water lines as may be required by lessee in the operation of said plant *or plants.*

"It is agreed and understood that the lessee shall have the right to lay and maintain any *and all* oil or gas lines for the purpose of conveying oil or gas to the aforesaid plant *or plants* across the aforesaid lands of lessors, it being

understood that any water lines, oil lines or gas lines laid in and upon other of the lands of lessors than the aforesaid 25 acres contemplated for plant purposes shall be buried at the usual depth where the same are laid to cross any used fields or lands occupied for other purposes than pasturage, when requested by lessors.

"It is expressly agreed and understood that the aforegoing agreement shall in no manner conflict with any oil or gas lease heretofore executed by said lessors or either of them, and that the same shall in no way be construed to affect the oil and mineral rights of lessors upon any of the aforesaid lands.

"It is agreed and understood that all fencing that may be required or deemed necessary by lessee or his assigns for the enclosure of the aforesaid plant or *plants and* the roadways leading therefrom shall be done wholly at the expense of lessee.

"It is understood and agreed that lessors shall have, free of cost, for the purpose of improving roadways or streets in and upon their aforesaid lands, any and all refuse from screenings of crushed rock which may be by lessee deemed unmarketable.

"If said lessors own a less interest in the above-described lands than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided for shall be paid the lessors only in the proportion which their interest bears to the whole and undivided fee.

"If the estate of either party hereto is assigned—and the privilege of assigning in whole or in part is expressly allowed—the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the lands or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment, or a true copy thereof; and it is hereby agreed that in the event this lease shall be assigned as to a part or as to parts of the above described lands, and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rentals due by him or them, such default shall not operate to defeat or affect this lease in so far as it covers a part or parts of said lands, together with the right to change locations as aforesaid.

"Lessors hereby warrant and agree to defend the title to the lands herein described and agree that the lessee shall have the right at any time to redeem for lessors by payment any mortgages, taxes or other liens on the above described lands, in the event of default in payment by lessors, and be subrogated to the rights of the holders thereof.

"It is agreed and understood that in the event lessee shall fail to begin the construction of a necessary plant with which to begin operations as aforesaid within a period of 60 days from this date, this lease shall become null and void, and that in the event lessee, or his assigns, shall at any time suspend operations for a period of more than 90 days, this lease shall terminate at the will of lessors, and all rights of lessee hereunder be forfeited, save and except as to lessee's right to remove from the aforesaid lands all machinery, equipment, buildings, pipe lines, etc.

"In testimony whereof, we have this, the 29th day of October, A. D. 1919, executed this in duplicate.      L. C. Downtain.

"E. C. Downtain.

"Lessors.

"A. L. Nelson.

"Lessee."

The words we have italicized in the above copy of the contract are the words interlined in the contract, to which reference is hereinafter made.

Defendants in error alleged:

First, that they "were induced to execute said contract by representations made to them by the defendant to the general effect that he was able to install and operate within a very short time a rock crushing plant * * * and would within a very short while install such rock crushing plant; that these representations were the main consideration and inducing cause of the plaintiffs entering into said contract; * * * that said representations were false and were fraudulently made for the purpose of inducing plaintiffs to enter said contract; that said representations were known by defendant to be false and the said defendant, knowing that he was unable to install such rock crushing plant had at the time no intention of doing so; * * * hence the real consideration for the making of said contract on the part of the plaintiffs has wholly failed and said contract is void by reason of the false and fraudulent representations aforesaid."

Second, that if said contract is not wholly void by reason of the fraud alleged in the preceding portion of the pleading, "nevertheless said contract provides as follows: 'It is agreed and understood that in the event lessee shall fail to begin the construction of a necessary plant with which to begin operations as aforesaid, within a period of sixty days from this date, this lease shall become null and void'"; that "in the negotiations between the plaintiffs and defendant leading up to the making and execution of said contract the sole subject-matter of such negotiations was the construction and operation of a rock crusher and rock crushing plant; * * * that the defendant wrote or caused to be written a contract evidencing the agreement reached by the parties in their said negotiation; that the contract as so written and submitted to the plaintiffs, and to the terms of which the plaintiffs assented and agreed, contained the identical forfeiture provision quoted above; that the terms, 'a necessary plant with which to begin operations aforesaid,' meant and referred to, and according to said draft of the contract could only mean and refer to, the actual construction of a rock crushing plant; that on the occasion of

the submission of said draft of the contract and the plaintiffs' agreement thereto, the defendant represented that it would be 30 or 60 days before he could get the rock crusher; that during said time he desired the privilege of mining and marketing sand, and gravel from said land on a royalty basis; that in pursuance of said new negotiations the terms of royalty to be paid were agreed upon, and the defendant undertook to embody the terms of the new agreement with respect to sand and gravel in the written contract already drawn and agreed to by means of interlineations; that defendant made or caused to be made such interlineations, and thereafter said contract containing said interlineations was signed by the plaintiffs and the defendant; that by reason of the said interlineations including in the subject-matter of the contract, the mining and marketing of said sand and gravel, the forfeiture provision above quoted, if it does not clearly refer to and mean the beginning of the construction of the rock crushing plant, nevertheless was intended by the parties to have that meaning and to whatever extent it may fail to express such meaning is ambiguous."

Third, that should neither of these two pleadings be sustained by the court, then "that the real intention and agreement of the parties was that there should be a forfeiture of all rights of the lessee under the contract in case he failed to begin the construction of a necessary plant within 60 days with which to begin the operations of mining and operating quantities of limestone rock in and upon said land and in so far as said provision in said contract may fail to show such agreement and intention it is the result of mutual mistake of the parties in reducing the contract to writing; or if not mutual mistake, then it was a mistake on the part of plaintiffs induced by fraud on the part of the defendant in this: Such was the agreement in the negotiations, and the defendant, if he did not understand and believe that such was the meaning and effect of the language of said forfeiture provision, knew that the plaintiffs so understood and construed it, and having assumed to embody the true agreement in writing fraudulently failed to do so."

Plaintiffs then alleged "that the defendant failed to begin the construction of a necessary plant with which to begin the operations of mining and marketing limestone rock from said land within 60 days within the meaning and intent of said contract," and for such failure prayed that the lease contract be adjudged null and void and that the same be canceled and removed as a cloud from plaintiffs' title, etc.

The court submitted the case to the jury upon special issues. In response to the following special issue: "First. The lease in-volved in this suit contains a provision reading as follows: 'It is agreed and understood that in the event lessee shall fail to begin the construction of a necessary plant with which to begin operations aforesaid within a period of 60 days from this date this lease shall become null and void.' The question for your consideration is: Did the interlineations that were made in the typewritten contract, and which were made for the purpose of including in the subject-matter of the contract the subject of sand and gravel, render the forfeiture provision just quoted ambiguous, that is, of doubtful or uncertain meaning or capable of being understood in either of two or more possible senses?" the jury answered, "No."

To the following special issue: "Did the plaintiffs and the defendant agree that a failure on the part of the lessee to begin the construction of a rock crushing plant within 60 days from the date of the lease should render the lease null and void, and was the failure of the lease so to provide due to mistake on the part of the plaintiffs induced by fraud on the part of the defendant?" the jury answered as follows: "We answer yes to the word void. No to balance of question No. 4."

In response to other issues submitted the jury found that the consideration paid by Nelson for the lease was $1; that the defendant did not within 60 days from the 29th day of October, A. D. 1919, the date of the contract, begin the construction of a necessary rock crushing plant; that plaintiffs did not waive the provision of the lease in reference to forfeiture of the rights thereunder upon failure of the defendant to begin the construction of a necessary plant, etc.; and that plaintiffs were not by reason of any of their acts estopped to claim a forfeiture of said lease. Other issues were submitted which are not necessary to here set out to which no answers were returned by the jury, the answers indicated above being the only answers to issues submitted.

The trial court rendered judgment forfeiting the lease. The Court of Civil Appeals for the Second Supreme Judicial District, Justice Buck dissenting, affirmed the judgment. 249 S. W. 241.

It is conceded by attorneys for defendants in error that two of the "three possible reasons advanced in the pleadings" why the provision in question does not embody the real agreement have been eliminated by the answers of the jury above stated. No issue of mutual mistake of the parties was submitted. But the contention of defendants in error is that, if there is any evidence from which the jury might have found that there was mutual mistake of the parties in the making of the contract, then such finding by the court is implied by authority of R. C. S. art. 1985, to support the judgment rendered

by the trial court. In their written argument defendants in error say:

"The question of whether or not there is evidence to support a finding to the effect that it was the agreement of the parties that a failure to begin within 60 days the construction of a rock crushing plant, should terminate the lease and the failure of the lease so to provide was the result of mutual mistake of the parties is, as we view it, the sole and only question presented for the consideration of this court. The jury made no finding on the issue of mutual mistake by reason of the erroneous condition attached to the attempted submission of that question. The question was not in fact submitted to the jury. None of the parties to the suit requested the submission of the issue of mutual mistake. If, then, a finding of the existence of mutual mistake would support the judgment, and if there was evidence from which the jury, had the question been submitted, might have found the existence of mutual mistake, then such finding is implied to support the judgment that was rendered. (R. S. art. 1985)."

[1] The trouble with that contention is that it is without foundation in the pleadings. Plaintiffs do not allege that the failure of the lease contract to provide that, if Nelson did not begin the construction of a rock crushing plant within 60 days from the date of the contract, the lease should terminate was the result of the mutual mistake of the parties. The allegations as to mutual mistake are shown above in the third alternative plea made by plaintiffs. This is the only portion of plaintiffs' petition referring to mutual mistake. An inspection of that portion of the pleading which is set out above shows that it is not an allegation that it was the agreement of the parties that a failure to begin within 60 days the construction of a rock crushing plant should terminate the lease and that the failure of the lease so to provide was the result of mutual mistake of the parties. To give the pleadings the interpretation contended for by defendants in error would be to assume that the words "a necessary plant * * * with which to begin the operations of mining and operating quantities of limestone rock" mean a rock crusher. A plant is the "machinery, tools, apparatus, appliances, etc., necessary to carry on any trade or mechanical business, or any mechanical operation or process." Southern Bell Tel. & Telegraph Co. v. D'Alemberte, 39 Fla. 25, 37, 21 South. 570, 572; Rooney v. Thomson (Sup.) 84 N. Y. Supp. 263; Maxwell v. Wilmington Dental Mfg. Co. (C. C.) 77 Fed. 938, 941. The machinery, tools, apparatus, appliances, etc., constituting a "necessary plant" under a given agreement would depend on the trade, mechanical business, mechanical operation, or process to be performed or done under that agreement. Plaintiffs' allegations concerning mutual mistake do not reveal the trade, mechanical business, or mechanical process to be done under this contract more definitely than that the plant was one "with which to begin the operations of mining and operating quantities of limestone rock." Plaintiffs allege that the real intention and agreement of the parties was that there should be a forfeiture of all rights of lessee under the contract in case he failed to begin within 60 days the construction of a necessary plant described in the quoted words in the preceding sentences. They then allege that in so far as the contract may fail to show such agreement and intention—that there should be a forfeiture of all rights of the lessee under the contract in case he failed to begin the construction of a necessary plant within 60 days with which to begin the operations of mining and operating quantities of limestone rock—it is the result of mutual mistake. These are their allegations to exemplify, make clear, and render uncertain, as they view it, the contract as signed and set out above. These allegations do not say by implication or otherwise that a rock crushing plant is what was meant by the terms "a necessary plant."

The contract itself shows what "trade, mechanical business, mechanical operations or process" was to be done unde it. The contract shows what Nelson agreed to do.

[2, 3] In considering the contract it is necessary to determine whether or not the interlined portions must be considered as a part thereof—whether the interlined words stand on a par with the words which were in the document before the interlineations were made. It is thought that the written contract cannot be considered by piecemeal. The final contract may have been arrived at by piecemeal—contracts often are—but when the final agreement was signed, including the additions made by interlineation, all parts ceased to have any separate existence and were consolidated into one unified whole, every part adjusting itself to every other part, each assuming equal dignity as to legal validity and to each of which the law imports the same effect that such part would have had if there had been no preliminary draft and agreement and the final agreement had all been reduced to writing in the original draft. Plaintiffs do not allege any fraud in making the interlineations. They do allege that the failure of the lease to provide that the failure on the part of the lessee to begin the construction of a rock crushing plant within 60 days from the date of the lease was due to "mistake on the part of the plaintiffs induced by fraud on the part of the defendant in this: Such was the agreement in the negotiations and the defendant, if he did not understand and believe that such was the meaning and effect of the language of such forfeiture provision, knew that the plaintiffs so understood and construed it, and having assumed to embody

the true agreement in writing, fraudulently failed to do so." This is no allegation that the interlineations that were made were fraudulently made. Furthermore, the jury in answer to special issue No. 4, above set out, found that there was no such fraud. Therefore no fraud is in the case. There is likewise no allegation of accident and no allegation of mistake except as above shown and disposed of. Where an alteration or interlineation appears in a contract and is alleged to have been made fraudulently or without the knowledge or consent of a party, the courts inquire most freely, not because of the mere fact that there is an interlineation, but because it must first inquire whether the writing is in fact the contract of the parties—whether their minds have met. Where the interlineations are not challenged as fraudulent or as inserted without warrant, they are parts of the contract. They are incorporated into the body of the contract and are subject to the same rules of contract as other words and phrases. Brown v. Ehlinger, 90 Wash. 585, 591, 156 Pac. 544.

Since no fraud was practiced in making the interlineations, and since they were made with the consent and knowledge of the plaintiffs, the contract as finally drawn, including the interlineations, must be looked to to determine the rights of the parties thereunder. When the verdict of the jury on special issues was received leaving the status of the contract thus, it became the duty of the court before whom the case was tried to render a decision in the light of those facts by applying to the contract thus vindicated the law applicable thereto. The contract stood as it was finally written with all the interlineations unscathed by the trial.

The contract provides that the lease should remain in force as long as lessee or his assigns "produce from said lands crushed and screened limestone rock, sand, gravel and quicklime, or either of them without cessation of operation for more than ninety days"; that the lessee should not "occupy at any time more than twenty-five acres of said lands by way of quarry, gravel pits, sand pits and *necessary plants*" that lessee should have access over and across the "lands of lessors adjacent to the aforesaid to be selected acreage or acreages * * * northward from said *plant or plants*"; that lessee should have "the right to lay and maintain all necessary water lines as may be required by lessee in the operation of said *plant or plants*"; that he should have the right to lay "any and all oil and gas lines for the purpose of conveying oil or gas to the aforesaid *plant or plants*"; that the fences "deemed necessary by lessee or his assigns for the enclosure of the aforesaid *plant or plants* * * * shall be done wholly at the expense of lessee," etc. We

are forced, therefore, to the conclusion that the words "necessary plant" in the forfeiture clause, which is in the final paragraph of the contract, reading, "It is agreed and understood that in the event lessee shall fail to begin the construction of a necessary plant with which to begin operations as aforesaid," etc., mean a plant necessary, quoting the language of the contract, "to produce from said lands crushed and screened limestone, sand, gravel and quicklime or either of them."

[4] "Forfeitures are harsh and punitive in their operation. They are not favored by the law, and ought not to be. The authority to forfeit a vested right or estate should not rest in provisions whose meaning is uncertain and obscure. It should be found only in language which is plain and clear, whose unequivocal character may render its exercise fair and rightful." Decker v. Kirlicks et al., 110 Tex. 90, 94, 216 S. W. 385, 286.

As the judgment authorized by law, under the pleadings and findings of the jury, should have been in favor of defendant, we recommend that the judgments of the district court and of the Court of Civil Appeals be reversed, and that judgment be rendered for defendant.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and judgment rendered for the plaintiff in error.