CHARLES L. EPPS ET AL.

v.

FRANK P. EPPS.

</div>

1. EXEMPTIONS—TRAVELING SALESMAN NOT A "LABORER OR SERVANT."—An employe, who is not shown to have performed any services except as traveling salesman and book-keeper, or services of that nature, does not come within the meaning of the words "laborer or servant" as used in the statute relating to exemptions.

2. STATUTE—CONSTRUCTION.—Provisos and exceptions in statutes, by which their generality is qualified or restrained, or by which something is excluded from their general provisions, are to be strictly construed.

3. PRACTICE.—It is for the court at the time of rendering judgment, to determine whether the indebtedness for which judgment is being rendered is for the wages of a "laborer or servant," and that question need be no part of the trial.

APPEAL from the Superior Court of Cook county; the Hon. ROLLIN S. WILLIAMSON, Judge, presiding. Opinion filed November 25, 1885.

Mr. ROBERT H. McMURDY, for appellants; that exemption laws are liberally construed, cited Good v. Fogg, 61 Ill. 449; Washburn v. Goodheart, 88 Ill. 229; Smyth on Homestead and Exemptions, § 519.

Mr. A. M. McCONOUGHEY, for appellee; that the damages allowed appellee were due him for wages as laborer or servant, cited 1 Parsons on Contracts, 101; Coffin v. Reynolds, 37 N. Y. 641.

BAILEY, P. J. This was a suit in assumpsit, brought by Frank P. Epps against Charles L. Epps and Joseph F. Greer, to recover the value of certain services rendered by the plaintiff to the defendants. It appears that on or about October 17, 1881, the plaintiff was employed by the defendants, who were then engaged in certain mercantile business, in the capacity of traveling salesman and book-keeper, and that he served them in that capacity until some time in November, 1883, when the defendants failed in business. No rate of salary seems to have been expressly agreed upon, but the defendants credited the plaintiff from the time he entered their service up to the date of their failure, at the rate of $60 per month. After their failure the plaintiff was continued in their service without any further or different arrangement as to his salary or wages until June 1, 1884, when he was discharged.

The jury found the issues for the plaintiff and assessed his damages at $296.49, for which sum and costs the plaintiff had judgment. With the exception of two credits of $10 each claimed by the defendants, in respect to which the evidence was conflicting, the only controversy at the trial was as to the rate of salary or wages to which the plaintiff was entitled from the date of the defendants' failure up to June 1, 1884. The jury found against the defendants as to the two disputed credits, and computed the plaintiff's compensation at the rate of $60 per month.

We think the evidence warranted the verdict. The two disputed credits were sworn to by one of the defendants and disputed by the testimony of the plaintiff, and a conflict was

thus raised which it was the peculiar province of the jury to settle, and with their finding we see no occasion to interfere. As to the rate of salary to which the plaintiff was entitled, the practice on the part of the defendant of crediting him each month for two years at the rate of $60 per month, was strong evidence of at least a tacit agreement that his compensation should continue at that rate until notified by the defendants to the contrary. After their failure, the defendants desired and requested him to continue in their service, probably expecting to be able before very long to resume business, but no new arrangement seems to have been made as to his compensation. Under these circumstances, the jury had a right to presume that they intended to retain his services under the original arrangement, and that his salary was to continue at the same rate as before.

It is true, after the failure the plaintiff's work was much lighter. He no longer performed the services of a traveling salesman, and little remained for him to do as book-keeper. Precisely what he did do, and what services he was called upon to perform, the evidence fails to disclose. In the absence of evidence on that subject, it may be presumed that they were of the same general nature as those in which he was engaged prior to the failure. His compensation during this period, however, depended not upon the amount of service he was actually called upon to perform, but upon the contract express or implied, under which he was acting. According to that, as we have seen, he was to receive $60 per month, and we think that, under the circumstances, the jury were justified in awarding him that sum.

The court, after overruling a motion by the defendants for a new trial, rendered judgment on the verdict, and expressed in the record of the judgment a finding that the damages awarded the plaintiff were due him for wages as laborer or servant. This finding is assigned for error.

It is claimed that, as the case was tried by a jury, the question whether the amount due the plaintiff was for wages as laborer or servant, should have been submitted to and found by them. The fourth section of the act in relation to the

exemption of personal property approved May 24, 1877, is as follows:

"No personal property shall be exempted from levy of attachment or execution when the debt or judgment is for the wages of any laborer or servant; provided the court rendering judgment shall find that the demand so sued for is for wages due each person as laborer or servant; which finding shall be expressed in the record of said judgment and indorsed upon the execution when issued."

This section has never before, so far as we know, received judicial construction, but the language employed seems to leave little doubt that the legislature intended to devolve upon the court, at the time of rendering judgment, the duty of determining whether the indebtedness for which judgment was being rendered, was for the wages of a laborer or servant. This finding would seem to be required, not at the trial or as a part of the trial, but at the time of the rendition of judgment, and the statute provides in express terms that it is to be made by the court. We think there was no error in not having submitted the question to the jury.

There is greater difficulty in holding that the finding is supported by the evidence. The determination of this question must depend upon the interpretation to be given the words "laborer or servant" as used in the statute. It is well settled that statutes creating exemptions from levy and forced sale under execution are beneficial in their operation, and founded in a wise policy, and should therefore receive a liberal construction. Good v. Fogg, 61 Ill. 449; Washburn v. Goodheart, 88 Ill. 229; Thompson on Homesteads and Exemptions, §§ 4–7 and cases cited. But should the provisions of the exemption law under consideration here receive like construction?

The general purview of the statute is to grant exemption of a certain amount of personal property belonging to debtors, from attachment, execution and distress for rent. The fourth section creates an exception in favor of creditors whose judgments are for their wages as laborers or servants. It would seem that the same policy which dictates a liberal construction, of the statute in furtherance of its general beneficial purpose

would necessitate a restricted construction of an exception by which its operation is limited and abridged.

But apart from this consideration, it seems to be a general rule of statutory construction, that provisos and exceptions in statutes, by which their generality is qualified or restrained, or by which something is excluded from their general provisions, are to be strictly construed. Potter's Dwarris on Statutes, 118, note 11. Thus, in United States v. Dickson, 15 Pet. 141, Mr. Justice Story says, that it is "the general rule of law which has always prevailed, and become consecrated almost as a maxim in the interpretation of statutes, that where the enacting clause is general in its language and objects, and a proviso is afterward introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms. In short, a proviso carves special exceptions only out of the enacting clause ; and those who set up any such exception must establish it as being within the words as well as within the reason thereof." This rule was applied in Roberts v. Yarboro, 41 Texas, 449, where a statute, in the first section, provided that there should be no exclusion of any witness because of his being a party to be interested in the issue tried, and the second section created an exception in certain cases in actions by or against executors, administrators or guardians. The court say : "The general rule is prescribed by the statute that no witness shall be excluded because he is a party to or interested in a suit. The second section is in substance a proviso excepting parties in certain actions from the operation of the rule. The rule as established extends a privilege to parties, while the exception operates to curtail that privilege or right, and should not therefore be extended by construction."

There is another rule which should be noticed, viz., that in construing statutes, courts are required to give the language, when the sense will bear it, the usual and popular meaning attached to the words employed. Stuart v. Hamilton, 66 Ill. 253 ; City of Beardstown v. City of Virginia, 76 Id. 34; Deere v. Chapman, 25 Id. 610.

There is doubtless a sense in which the word "laborer"

may be applied to a person who performs any labor of any character, either physical or mental; and there is also a sense in which the word "servant" may be applied to a person who performs for another any kind of service; in which sense the word would be equivalent to "employe" or "agent," but those are not the significations which are popularly attached to the words "laborer" or "servant." A "laborer" is popularly understood to be a person who performs manual labor not requiring special knowledge or skill, and a "servant" is understood to be one who is employed to perform an inferior and menial service. There is good reason why persons of these classes, who are usually poor and relatively helpless, and whose claims for wages are usually small, should be excepted from the general rule as to exemptions.

The decisions of the courts giving construction to these and similar words in statutes, so far as we have been referred to them, support the view we have announced. Thus, in State v. Rusk, 55 Wis. 465, a statute provided for the payment by the governor out of certain funds, of the claims of laborers, sub-contractors, and material and supply men, for labor and supplies done and furnished in and about the grading and other work upon a certain railroad; and it was held, that the word "laborers" as employed in the act, was intended to designate those only who had performed manual labor in and about said road, and that it did not include members of the engineer corps, or the assistant general manager of the company.

In M. K. & T. Ry. Co. v. Baker, 14 Kansas, 563, a statute required a railroad company to take from its contractors a bond conditioned for the payment of all laborers, mechanics and material men and persons who should supply such contractor with provisions or goods of any kind, all just debts due to such persons. It was held that under this statute, a "timekeeper" and "superintendent" was not a laborer within the meaning of the word as there used, the court in its opinion quoting with approbation the definition of the word "laborer" given by Webster, viz.: "One who labors in a toilsome occupation; a man who does work that requires little skill, as distinguished from an artisan; sometimes called a laboring man." The court also holds that

this is the same in which the word is used in the exemption laws of the State, it being there used in much the same connection in which the word is used in the statute now under consideration here.

In Coffin v. Reynolds, 37 N. Y. 640, an act for the formation of corporations for manufacturing, mining and mechanical purposes, provided that the stockholders should be individually liable for all debts due and owing to all their laborers, servants and apprentices, for services performed; and it was held that a secretary of such corporation was not a servant or laborer within the meaning of the act. The court say, that " the scope and purpose of the statute was to protect the classes most appropriately described in the words used as those engaged in manual labor, as distinguished from the officers of the corporation, or professional men engaged in its service ; in short, to furnish additional relief to a class who usually labor for a small compensation, to whom the moderate pittance of their wages is an object of interest and necessity, and who are poorly qualified to take care of their own concerns, or look sharply after their employers'." See also, Balch v. N. Y. & O. M. R. R. Co., 46 N. Y. 521 ; S. & N. A. R. R. Co. v. Falkner, 49 Ala. 115 ; Campfield v. Lang, 18 Ch. L. N. 55.

As the plaintiff in this case is not shown to have performed any services except as traveling salesman and book-keeper, or services of that nature, we are of the opinion that he does not come within the meaning of the words " laborer or servant " as used in the statute in relation to exemptions. The judgment, therefore, to that extent, is erroneous. It will accordingly be modified by striking out the words, " And the court finds that the said damages are due the plaintiff for wages as laborer or servant," and in all other respects the judgment will be affirmed, the appellee to pay the costs of this appeal.

<div align="center">Judgment modified and affirmed.</div>