SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, PLAINTIFF IN ERROR, VS. A. H. D'ALEMBERTE, DEFENDANT IN ERROR.

1. The office of a proviso is to restrain the enacting clause; to except something which would otherwise be within it, or in some manner to modify it; and where it follows and restricts an enacting clause general in its scope and language, it is to be construed strictly and limited to objects fairly within its terms.

2. Where a telephone plant consists of separate wires and instruments for the use of subscribers, all connecting with each other by means of a call wire common to all at a central office, and the sum of the length of all its wires thus in use exceeds twenty-five miles, the company operating such plant is subject to a license tax of $100, under the 16th sub-division of section 8, Chap. 4010, acts of 1891, although the sum of the distances covered by the poles supporting its wires is less than twenty-five miles.

3. Where a word used in a statute has both a popular and a technical meaning, the court will give it effect according to its popular signification if it was so used by the Legislature, and

other parts of the statute may be referred to in determining the sense in which it was used.

4. Plaintiff's right of recovery is confined to the cause of action alleged in his declaration. If he fails upon such grounds he can not be permitted to recover on any other not alleged.

Writ of Error to the Circuit Court for Escambia county.

### STATEMENT.

On August 25th, 1892, plaintiff in error brought suit against defendant in error in the Circuit Court of Escambia county, and on September 5th filed its declaration alleging that it was a corporation engaged in the telephone business, and had for several years owned and operated a telephone plant in the provisional municipality of Pensacola, in said county, consisting of the furniture and apparatus at its central office in said city, and the instruments at the house of each subscriber, and of a system of poles and wires connecting the subscribers with the central office, and a call wire common to all and connecting all of the subscribers and the central office; that in many parts of the plant a number of wires are strung or suspended on a single line of poles, each wire connecting a different subscriber at a different point with the central office; that the word *line*, as used in the telephone business, has in such business a clearly defined, well known, established and definite meaning, *viz:* a line of poles and the wires suspended thereon without regard to the number of those wires; that the plaintiff's plant in Pensacola embraces only twenty-three miles of line as thus defined, although the length of the wire used thereon is much grater, *viz:* about seventy miles; that defendant was then, and for several years.

past had been, the collector of revenue for said county, and *ex-officio* collector of revenue for said provisional municipality, duly elected, qualified and authorized to act as such officer; that on October 1st, 1891, plaintiff endeavored to procure, and duly applied for a license from the State, county and municipality of Pensacola, to operate its said telephone plant, having a line of less than twenty-five miles in length, and tendered to defendant, as collector, the amount of the license taxes and fees therefor, as fixed by the State, county and municipality, respectively, *viz:* the sum of $50.50, and demanded that the licenses be issued to it; that defendant refused to accept the sum tendered or to issue the licenses, demanding of plaintiff that it procure licenses for the operation of a telephone line of more than twenty-five miles in length; and upon its refusal to do so, the defendant procured the plaintiff's local manager and agent to be repeatedly arrested upon the criminal charge of doing business in operating a telephone line without a license therefor, instituting a new prosecution upon such criminal charge each day; and furthermore levied upon the apparatus and property of plaintiff, of great value, which property was indispensible to plaintiff in the operation of its plant and business, and was proceeding to sell the same for the payment of the license tax for doing business with a telephone line of more than twenty-five miles in length, when the plaintiff, in order to save its agent from further prosecution, and prevent the loss of, and recover its property levied upon, after first protesting against the payment of the license tax demanded by defendant as being illegal, paid the same in the sum of $200, and the further sum of $5 as the cost of levy, to the defendant; that so

much thereof as is in excess of the sum of $50, for a line less than twenty-five miles in length, was wrongfully and illegally demanded and received by defendant of plaintiff, to plaintiff's damage of $300.

Defendant filed a demurrer to this declaration on October 5th, 1892, upon the grounds: 1st. It does not appear by the said declaration that the term "line," as used in the telephone business, is the same as when used in the law of the State of Florida, imposing said license tax. 2d. It does not appear by the said declaration that there are less than twenty-five miles of telephone line, within the meaning of the law, within the city of Pensacola. 3d. It does not appear by the said declaration that there are less than twenty-five miles of telephone line in the county of Escambia, within the meaning of the law. 4th. It appears by the allegations in the said declaration that plaintiff's telephone lines within the city of Pensacola are more than twenty-five miles in length. 5th. The said declaration is otherwise bad in substance, and insufficient in the law.

On January 7th, 1893, the court made an order sustaining the demurrer, and plaintiff not desiring to amend, judgment upon demurrer was rendered for defendant, that plaintiff take nothing by its writ, that defendant recover his costs and that execution issue therefor. From this judgment a writ of error was sued out by the plaintiff, and the only error assigned is the action of the court sustaining the demurrer.

The other facts in the case are stated in the opinion of the court.

*Maxwell and Maxwell and John E. Hartridge,* for Plaintiff in Error.

## JANUARY TERM, 1897. 29

South. Bell Tel. & Tel. Co. v. D'Alemberte.—Argument of Counsel.

### BRIEF OF MAXWELL AND MAXWELL.

The absolute and sharply drawn distinction between "line" and "wire" in speaking of telephone or telegraph plants will be found perfectly apparent by reference to the use of the words in all of the text books and reports; and it will be seen throughout that "line" is used as meaning the whole system or structure, and that when "wire" is intended that word is used just as "pole" and "insulator" are used to designate each its particular part of that which when completed in all of its parts constitutes a line.

See our own statutes, acts of 1856, chap. 782, page 15 entitled "an act to protect the telegraph wires and posts in the limits of the State and for other purposes." "Whereas many of the citizens of the State of Florida are interested in the construction of *lines* of the magnetic telegraph, and desire the protection of their property and the privilege of using the public roads and highways for their posts and wires. Therefore,

SECTION 1. Be it enacted, etc., that any company or individual may erect posts and wires and other fixtures, etc., etc.

And chapter 783, same page, entitled "An act granting a charter to the American Telegraph Company to enable them to construct lines of electric telegraph in this State and to maintain the same." Section 1 authorizes them to construct "*lines* of electric telegraph, etc." Section 2 authorizes them to "locate and construct its lines," etc., * * * "by the erection and construction of the necessary fixtures, including posts, piers or abutments for sustaining the *wires*, etc., etc."

See also 1 Am. R. R. & Corp. Reports 73 (S. C. 18 Rep. 910; 71 Md. 535), where the following language

is used: First head-note: "The construction of a line of poles and wires, etc." Last head-note: "A line intended to carry a large number of wires, and that it was in reality a part of a trunk line, etc." In the statement of case: "And constructing a telegraph or telephone line of wires."

It speaks throughout of "a line" (singular) of "wires" (plural), which is designated as a trunk line. 12 L. R. A. 251 defines "a line," as used in the New York tax laws, as follows: "Sec. 2. The word line shall include the interest in the land on which the poles stand, the right or license to erect such poles on land, all poles, arms, insulators, wires and apparatus, instruments or other thing connected with or used as a part of such line in town or ward, and belonging either to the owner of such line or the person, corporation or association in control thereof." There is nothing in any of these uses of the word which would authorize one in determining the length of this unit called a line to select one of the enumerated parts of a complex structure and go back and forth, back and forth, over the line to ascertain the amount of this one material employed in its construction.

2d. But even if the word was used in such a sense in ordinary parlance, the meaning which would be adopted in the construction of the statute is that which is technical to the peculiar trade or business in relation to which the word is used in the statute. The word having an accurate, well-defined meaning in the business which was the subject of legislation will be presumed to have been used in that sense.

"The language of acts have been averted to, and it has been seen that when technical terms are used they are to be taken in a technical sense, unless there be

JANUARY TERM, 1897. 31

South. Bell Tel. & Tel. Co. v. D'Alemberte.—Argument of Counsel.

something in the context to show that a different meaning is intended."

Potter's Dwarris on Statutes 215; see also Id. 198-9; Suth. on Stat. Const. par. 247; 8 Pet. 277; 10 Pet. 137; 3 How. 106; 96 U. S. 108 and 112; 101 U. S. 278.

If there remains any question as to the meaning of the word "line" in this statute, there are two reasons why the doubt should be resolved in favor of appellant. Had "wire" been intended by the Legislature, that word could have been used, and all ambiguity avoided; while if the broader meaning was intended, the language employed was that which a telephone man would use to express it, and the only one which will do so without circumlocution.

In case of doubt as to the construction to be placed upon a statute imposing a charge upon a subject, as do tax laws, that meaning will be adopted which most favors the subject: Cooley on Tax, 266-9.

### BRIEF OF JOHN E. HARTRIDGE.

So far as our personal range of investigation has extended no cases have been found that decide in terms the meaning of the word "line" as used in relation to telephone companies. Cases do exist, however, in which, where other points have been raised, the courts in their decisions have spoken of telephone lines, and in these cases they speak of them on the theory of all of their component parts making the line.

In the case of Central Pennsylvania Telephone & Supply Company vs. Wilkes Barre & W. S. R'y Co., 11 Pa. Co. Ct. R. 417, they speak of its being the duty of a telephone company using a highway for its poles and wires to maintain its line, etc., thus show-

ing that neither the wire nor the poles separately constitute the line.

So in the case of People vs. Dolan (N. Y.), 27th N. E. Rep. 269, and People vs. Kierney, Id., it was held that the interests in the land on which the poles stood, the right of license to erect such poles on the land, and all poles, arms, insulators, wires, apparatus, instrument, or other thing connected with or used, constituted the line. This was a telegraph case, but it gives emphasis to the contention here, that the poles show the distance of the line. Otherwise, if we take the length of the wire around the poles and on its arms and in all respects used in connection with the line, we would make a distance between two cities from and to which a telephone line extended much greater than the poles, and yet the distance of the transmission of a message would only be that covered by the poles. This, it seems to us, would show the fallacy of taking the wire as a criterion of length.

The electric street railway cogently illustrates the soundness of our contention. The rails of an electric railway covering the distance of ten miles would require the use of a length of wire much greater than ten miles to operate it. No one, however, would think of calling the road a fifteen-mile road simply because the wires in use extended in a direct line would cover the latter distance. The distance to which passengers and freights are transported, being the length of the rail, forms the crucial test of measurement, and not the wires strung upon the poles.

If a telephone line were bonded on its mileage, does any one for a moment think that the length of the wires in use taken as an entirety would form the basis upon which securities would be issued? The

most guileless lamb ever fleeced in Wall Street would recognize the absurdity of such a proposition. The logical sequence of every chain of thought germinated in regard to the proper meaning of the word "line" in the statute, we earnestly insist, points out the fallacy of the tax collector's position.

The second contention of this case, that the levy made by the collector was taking property without due process of law, we think well founded.

In the case of Johnson, Tax Collector, vs. Armour et al., decided April 19th, 1893, Supreme Court of Florida, the decision in the lower court was based on the ground that the tax was illegal for the reason that the act gives no opportunity to a dealer for a hearing as to the value of his business. The Supreme Court, while putting their decision upon another ground, did not gainsay the soundness of the ground upon which the decision was based in the lower court.

In that case, it being the same ninth section of the act of 1891 under consideration in this case, the section complained of provides "that all dealers in dressed meats doing a business of $25,000.00 or more per annum shall pay a license of $500.00." No method is provided in the act for ascertaining the amount of business done by dealers in dressed meats. To seize the property of a tax payer for refusing to pay was the arrogation to himself by the collector of the power to determine who were within the class of dealers who did a business of $25,000.00 or over per year.

In the case at bar it is necessary for the tax collector to decide what constitutes a line of telephone in order to establish its mileage. If he decides that the poles on which the wires are strung constitute the dis-

34 SUPREME COURT.

South. Bell Tel. & Tel. Co. v. D'Alemberte.—Argument of Counsel.

tance of the line the license will be one amount, while if he decides that the sum of the length of all the wires in use constitute the line the license tax will be a larger amount. The fact that a question of this character is left to the decision of the tax collector and no method provided in the act for the establishment of the meaning of the word "line" as used in the act, makes the tax illegal, or at all events, makes the effort to collect by seizure without a defendant first having had the opportunity of being heard illegal and unconstitutional. The fact that this case is before the court today on this question gives emphasis to this contention.

If this argument is not sound, then we would be placed in the attitude of the collector of one county giving one construction to the word "line," and in another county a different definition being given, the telephone companies would pay a different license in different counties on similar mileages. This lack of harmony can only be prevented and the act uniformly enforced as to amounts collected, by the statute giving the word a definite construction, or the collectors resorting to the courts to compel payment of the tax by suit and obtaining an adjudication of it.

We do not mean to say that in all instances the tax assessor is robbed of the exercise of his judgment. For instance, he has the right to place valuations upon properties, and this is an exercise of his judgment, and a constitutional one. But the very act of the Legislature which gives him this authority at the same time provides a method for reviewing the assessments he may make and have determined the valuations where error is complained of. No such opportunity is given to the telephone companies.

JANUARY TERM, 1897.　　35

South. Bell Tel. & Tel. Co. v. D'Alemberte.—Argument of Counsel.

We do not contend that summary process for the collection of taxes is obnoxious to the constitutional provision regarding due process of law. But the tax payer must have a remedy afforded him by notice and an opportunity to be heard. Any legislative act which seeks to take his property under the guise of tax dues or license dues to the State, and which leaves the matter to the judgment of the tax officer without providing any method for the tax payer to be heard, is taking his property without due process of law.

"If any question of fact or liability under any legislative enactment is conclusively presumed against the tax payer, it is not due process of law." Ziegler vs. S. & N. A. R. Co., 58th Ala. 594; Wilburn vs. McCalley, 63d Ala. 436.

Section 10 of the act makes failure to pay a misdemeanor and provides for the punishment of the delinquent. Criminal statutes must be strictly construed. We are placed here by this act at the mercy of the tax collector, both as to our property and our liberty. If this is a constitutional method of deciding what constitutes a line of telephone of 25 miles or more, then the tax collector can, without any hearing upon the part of defendant, seize his property and have him arrested and prosecuted for a misdemeanor. Before such dire consequence should come to a citizen's property or his person, there should be some constitutional method of determining his rights. The absence of a provision as a condition precedent to the enforcement of the act by the tax collector's adjudication of what does or does not constitute a line of telephone, renders it illegal and the tax only collectible by a suit at law.

We contend that in this case the only manner in which the license tax could be collected would be by

a suit at law bringing the delinquent into court and having his rights heard and determined.

*John C. Avery*, for Defendant in Error.

CARTER, J.:

The questions involved in this case depend upon the proper construction of the sixteenth subdivision of section 9, chapter 4010, acts of 1891, entitled "An act for the assessment and collection of revenue," reading as follows: "Electric light, water works, gas light and telephone companies shall each pay, on every plant, to the tax collector of each county where such plant is located and operated, a license tax of one hundred dollars; *Provided*, Telephone lines of less than twenty-five miles in length shall pay a license tax of twenty-five dollars." It is not denied by plaintiff that its line is more than twenty-five miles in length, if this length is to be estimated at the sum of the length of its wires in use by all of its subscribers; but it contends that its line is to be estimated at the sum of the distances covered by the poles supporting its wires, because in the "telephone business" the word "line" means "a line of poles and the wires suspended thereon, without regard to the number of those wires," and the declaration alleges that this meaning is "clearly defined, well known, established and definite." It will be observed that the words "telephone lines" occur only in the proviso of that portion of the statute now under consideration, and therefore constitute an exception to the general words "telephone companies" or "plant," contained in the enacting clause. The office of a proviso is to restrain the enacting clause; to except something which would

otherwise be within it, or in some manner to modify it, and where it follows and restricts an enacting clause general in its scope and language it is to be construed strictly and limited to objects fairly within its terms. United States vs. Dickson, 15 Peters, 141; McRae vs. Holcomb, 46 Ark. 306; Bragg vs. Clark, 50 Ala. 363; Epps vs. Epps, 17 Ill. App. 196; State *ex rel.* McQuaid vs. Commissioners of Duval County, 23 Fla. 483, 3 South. Rep. 193. Bearing in mind these elementary rules of construction, we have no hesitancy in holding that upon the allegations of plaintiff's declaration its telephone plant was subject to the license tax imposed by the enacting clause of the statute quoted; and that as to its plant the exception created by the proviso did not apply. The purpose of the statute was to require a license tax of $100 from every telephone company operating a plant in the State, except plants having a line of less than twenty-five miles in length, which were to be taxed $25 only. The proviso was inserted in the statutes for the benefit of companies owning small plants, from the operation of which the profits derived would not justify the payment of so large a license as $100.

A *line* is defined by Webster's International Dictionary as "a wire connecting one telegraphic station with another, or the whole of a system of telegraph wires under one management and name;" and by the Century Dictionary as "a telegraph wire between stations, forming with them the circuit." A *plant* is defined by the Century Dictionary as "the fixtures, machinery, tools, apparatus, appliances, *etc.*, necessary to carry on any trade or mechanical business, or any mechanical operation or process." The plaintiff admits that its wires ran from the central office to each

individual subscriber, a separate wire and instrument
for each subscriber, and that by means of a call wire
in the central office the wires leading to any two sub-
scribers could be connected together, and it is not de-
nied by the declaration that if the word *line* was used
by the Legislature in its popular sense, the plaintiff's
line would exceed twenty five miles in length. We
think the Legislature used the word in its popular-
sense, and not technically as defined in the declaration.
If we adopt such technical meaning, we have the un-
fair result of taxing a telephone plant $25 only which
owns many lines of posts a few miles long, supporting
independent wires connected at the central office only,
and supplying perhaps several hundred subscriber in
a populous community, while another plant in a less
populous community, owning a few lines of posts sev-
eral miles in length, supplying perhaps a tenth as
many subscribers, is required to pay a license tax of
$100. The Legislature could have intended no such
result. A line though supported by posts supporting
other lines is none the less a line. If the length of
two lines running parallel within a few feet of each
other, supported by separate posts, supplying separate
customers on the same street are to be added in esti-
mating the length of telephone lines, as is not denied
by the plaintiff, we are unable to see why a different
rule should prevail where the same conditions exist
except that the same posts are used to support both
lines. By giving to the statute the construction we
adopt, we are carrying out the intention of the Legis-
lature to reduce the license tax to be paid by compa-
nies deriving small profit from their investment, while
by adopting the construction contended for by plain-
tiff, this intention would not only be disregarded, but

entirely frustrated. While it is true, as a general rule, that popular words are to be construed in the popular sense, and technical words in a technical sense, when used in a statute, yet when a word has both a popular and a technical meaning, the court will give it effect according to the popular signification if it was so used by the Legislature, and the context may be referred to in ascertaining the sense in which it was used. Green vs. Weller, 32 Miss. 650; Cummings vs. Coleman, 7 Rich. Eq. 509, S. C. 62 Am. Dec. 402; People vs. Tighe. 5 Hun. 25; State *ex rel.* Owens, vs. Barnes, 24 Fla. 153, 4 South. Rep. 560.

The plaintiff also contends that the seizure of its property by the collector under subdivision 16 of section 9 of the act referred to, for failure of the plaintiff to pay the license tax of $100 demanded by defendant, was "an arrogation of judicial power," and constituted the taking of plaintiff's property without due process of law; and that plaintiff was entitled to recover upon that theory. As to this contention it is sufficient to say that the declaration does not claim damages for any illegal act of the defendant or trespass committed by him against the plaintiff's property. It specifically seeks to recover only the difference between the amount of money paid by plaintiff to defendant and the license tax legally due for a telephone line of less than twenty-five miles in length, because, as it alleges, this difference was not justly chargeable to plaintiff, and was paid by it under protest.

We find no error in the record, and, therefore, the judgment of the court below is affirmed.