THE STATE PUBLIC UTILITIES COMMISSION *ex rel.* The Pike County Telephone Company, Appellee, *vs.* H. G. NOBLE *et al.* Appellants.

*Opinion filed October 24, 1916.*

1. PUBLIC UTILITIES—*purpose of Public Utilities act.* The purpose of the Public Utilities act is to bring under public control property which is being applied to public use, the owner of such property being required to submit to its control by the public to the extent of its interest as long as the public use is maintained.

2. SAME—*benefits need not be received by the whole public.* It is not essential to a public use that the benefits should be received by the whole public or even a large part of it, but the benefits must not be confined to specified or privileged persons.

3. SAME—*what is required to make use public.* A public use requires that all persons must have an equal right to the use and that it must be in common upon the same terms, however few the number who avail themselves of it, and that it shall be open to all people to the extent that its capacity may admit of such patronage.

4. SAME—*use must concern the public as distinguished from individuals.* To constitute a public utility the use must concern the public as distinguished from an individual or any particular number of individuals, but it may be confined to a particular district and still be public.

5. SAME—*what determines whether a company is operating a public utility.* The question whether a person or persons, association, co-partnership or company is owning, operating or controlling a public utility is one that necessarily depends upon the special facts connected with the management, operation or control of such business.

6. SAME—*when mutual telephone company is operating a public utility.* A mutual telephone company maintained by an up-keep assessment on stockholders and which does not rent telephones to non-stockholders is operating a public utility when its line has connection with the exchange of a commercial telephone company, enabling stockholders and others complying with the rules to send or receive messages *via* its lines over the commercial line to nearby towns by paying the toll charges over the commercial line, and where outsiders may connect lines with the company's exchange by complying with the company's rules and regulations.

7. SAME—*what determines whether new construction is entirely new or an extension of existing plant.* Whether the new construc-

tion is entirely new or is an extension of an existing plant, as provided in section 55 of the Public Utilities act, depends upon whether or not it is a construction to further the same kind of business or to install a new service.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

ANDERSON & MATTHEWS, for appellants.

EVERETT JENNINGS, TIMOTHY F. MULLEN, and GEORGE M. MORGAN, for the State Public Utilities Commission.

O. F. BERRY, L. T. GRAHAM, and BEN B. BOYNTON, for appellee the Pike County Telephone Company.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from an order and judgment entered by the circuit court of Sangamon county affirming an order made by the State Public Utilities Commission requiring the appellants, and each of them, their officers, agents and employees, to desist from operating a telephone exchange until a certificate of convenience and necessity should be obtained from said commission. The petition upon which this order was entered was filed with the Public Utilities Commission by the Pike County Telephone Company, a corporation doing a general telephone business in Pike county, Illinois, and having a telephone exchange in the village of Perry, in said county.

The facts are set out by stipulation, as follows: Appellants, as individuals and as representing in an official capacity two hundred other individuals, mostly farmers or retired farmers, were constructing a telephone exchange outside of said village, in said county, without obtaining or applying for said certificate. About 1902 two farmers' telephone lines were constructed into Perry, with a switch connection in a hotel in that place. A short time afterwards

one Orr built a telephone line at Perry and also an exchange in said village. With this exchange the farmers' lines were connected. Thereafter the Pike County Telephone Company built a line into said village and constructed in connection therewith an exchange. The farmers' lines and exchange were sold to one Doane, who afterwards sold them to the Pike County Telephone Company. Previous to the beginning of these proceedings some fifteen farmers' telephone lines were constructed in the vicinity of Perry, most of them extending into the corporate limits and representing approximately an investment of $6000. Shortly before these proceedings the Pike County Telephone Company reconstructed and took over the farmers' lines in said village, without compensation, not having obtained the consent of the farmers but with their acquiescence. The only switchboard or exchange in said village is that operated and owned by said Pike County Telephone Company. In the early part of 1914 appellants and their associates took steps to organize a telephone company, and also undertook the construction of a telephone exchange within said village under a franchise granted by the village authorities requiring them to furnish service to any of the public desiring the same. The Pike County Telephone Company filed a petition before the State Public Utilities Commission, and after a hearing an order was entered holding that the proposed building of a telephone exchange in said village would make the telephone business of appellants a public utility. On appeal to the circuit court said order of the commission was affirmed. Thereafter appellants dropped the proposed plan of building a telephone exchange in said village and began the construction of the telephone exchange here involved, outside of said village. It was further stipulated that appellants and their associates are organizing a company which, in effect, will be a legal co-partnership or association, and that when they have fully completed their work they will elect proper officers, who will have authority to manage said exchange and

telephone business; that this company will issue stock to the various farmers and individuals owning interests in said farmers' lines, and will pass a by-law not to rent 'phones to any persons other than their regular stockholders, and not to make any charges to persons not owning stock but that the use of its lines to outside persons will be regulated by a proper by-law; that in order to pay the up-keep of said lines the shareholders are to be assessed a sufficient amount of money each year; that when the company is organized it is proposed to extend said farmers' lines wherever it is necessary to meet the farmers' service, and that any citizens of said village who wish to construct lines out to said telephone exchange will be permitted to do so on complying with the rules and regulations of said company; that telephone messages have been and are to be sent through said farmers' telephone exchange to Mt. Sterling and Versailles, where the farmers' telephone lines connect with commercial lines, and that appellants can send messages *via* their lines onto and over the commercial lines at these points, the person sending the message paying only the toll charges over the commercial lines; that appellants, and those associated with them in said farmers' exchange, have no interest of any kind or nature in said commercial telephone lines for the use of which these tolls are collected, and that telephone messages are and will be received back from said commercial lines over said farmers' lines in the same manner and on the same terms as they are transmitted.

Appellants contend that they are not operating a public utility and that therefore said commission had no jurisdiction. Section 10 of the Public Utilities act defines a public utility as including every corporation, firm, partnership or individual that controls, operates or manages "within the State, directly or indirectly for public use, any plant, equipment or property used or to be used for or in connection with * * * the transmission of telegraph or telephone messages between points within this State." The purpose

of this act was to bring under public control property which was being applied to public use, the owner of such property being required to submit to its control by the public to the extent of its interest as long as the public use is maintained. (*Public Utilities Com.* v. *Bethany Telephone Ass'n,* 270 Ill. 183.) It is not essential to a public use that the benefits should be received by the whole public or even a large part of it. They must not be confined, however, to specified or privileged persons. (*People* v. *Ricketts,* 248 Ill. 428.) A public use requires that all persons must have an equal right to the use and that it must be in common upon the same terms, however few the number who avail themselves of it; that it shall be open to all people to the extent that its capacity may admit of such use. (*Public Utilities Com.* v. *Monarch Refrigerating Co.* 267 Ill. 528.) The use must concern the public, as distinguished from an individual or any particular number of individuals. It may be confined to a particular district and still be public. (*Public Utilities Com.* v. *Noble Telephone Co.* 268 Ill. 411.) The facts in this case are very similar to those in the case last referred to. The only question for determination here, as in that case, is whether appellants, directly or indirectly, operate or manage their business for a public use. In that case the court said (p. 415): "It is immaterial that it does not furnish as complete service as is furnished by most commercial companies. So far as its business extends, its service is open, under the provisions of this ordinance, to anyone who may demand it and is willing to pay the price stated in the constitution and by-laws of the company for rendering such service." Practically the same condition is presented here. The service is open to anyone within the village of Perry, or in the adjacent territory outside of the village, who is willing to become a shareholder under the conditions and terms provided, as set out in the stipulation of facts filed in this cause. The shareholders or members of such partnership or association have in this case, as they

had in that case, the means of communicating freely with one another, and also of communicating over their own lines, *via* commercial lines, with various cities and villages in that section of the State.

This court has held that railroad tracks laid in the streets of a city by private individuals, connecting with public railroad tracks previously laid, become, in legal contemplation, a part of the railroad with which they connect and are open to the public and subject to public control in all respects as other railroad tracks. (*Chicago Dock Co.* v. *Garrity,* 115 Ill. 155; *People* v. *Blocki,* 203 id. 363.) In *Pioneer Telephone and Telegraph Co.* v. *Grant County Rural Telephone Co.* 119 Pac. Rep. 968, a rural telephone company, not operated for hire, petitioned the utilities commission of Oklahoma to require a commercial company to permit connection with its exchange. The commission required the commercial company to permit such connection, and on appeal the Supreme Court of that State upheld the commission. Under a statute somewhat different from our own the Michigan railroad commission held that the words "doing a telephone business" applied to a mutual telephone company while rendering free service to its members; that such company was doing a telephone business and was a public utility, the court apparently basing its holding largely upon the ground that the mutual telephone company furnished long distance telephone service practically on the same basis as long distance service is furnished to the members of this association. *Reading Central Telephone Co.* v. *Fayette Rural Telephone Co.*—Public Utilities Reports, 1915*a,* p. 56.

In recent times there is undoubtedly an increasing need of stricter regulation of all employments which affect public interest. "The use of the telephone has come to be quite generally regarded not as a luxury or convenience but a necessity, and it is essential to the greatest public convenience that all users of telephones should be able to secure, as nearly as possible, direct connection with all other users."

(*Union Trust and Savings Bank* v. *Kinloch Long Distance Telephone Co.* 258 Ill. 202.) The question whether a person or persons, association, co-partnership or company is owning, operating or controlling a public utility is one that necessarily depends upon the special facts connected with the management, operation or control of such business. A mutual telephone company may or may not be operating and managing a public utility, but when it is operating its line in connection with the exchange of a commercial telephone company and serving the public in the manner that, as shown here, appellants' lines are serving the public, there can be no escape from the conclusion that the business is a public utility and is subject to the control of the Public Utilities Commission of this State. *Public Utilities Com.* v. *Noble Telephone Co. supra; Buncombe Telephone Co.* v. *McGinnis,* 268 Ill. 504. See, also, *Mutual Telephone Co.* v. *Telephone Co.* 92 Ohio St. 336.

Counsel for appellants further contend, even if their business be held to be a public utility, that under the provisions of section 55 of the Public Utilities act they have a right to construct a telephone exchange outside of the corporate limits of Perry without first getting a certificate from the Public Utilities Commission. Said section 55, in part, provides: "No public utility shall begin the construction of any new plant, equipment, property or facility which is not in substitution of any existing plant, equipment, property or facilities or in extension thereof or in addition thereto, unless and until it shall have obtained from the commission a certificate that public convenience and necessity require such construction." (Hurd's Stat. 1916, p. 2037.) From the stipulated facts it appears that appellants have never had a switchboard or other equipment necessary to connect their lines together, independently of the Pike County Telephone Company, since that company took over the business of the farmers' lines purchased from Doane. "A telephone is capable of several uses. It may be used on private lines

to connect two houses or two offices, or it may be used in an exchange system or to connect several exchange systems. A telephone exchange is an arrangement for putting up and maintaining wires, poles and switchboards within a given area, with a central office and the necessary operators to enable the individual hirers of telephones within that area to converse with each other. In the case of an exchange system the customer is also furnished with the exchange service and its accompanying features, which include connection with the exchange and all subscribers, telephone operators, etc." (*Western Union Telephone Co.* v. *American Bell Telephone Co.* 105 Fed. Rep. 684.) Each of the telephone lines of appellants in existence when the Public Utilities act went into effect appears to have been owned by farmers, and said lines were constructed by them to the exchange of the Pike County Telephone Company for the purpose of receiving telephone service from that company by means of the switchboard and necessary operators to make connections, complete the calls, etc. A "plant" has been defined as "the fixtures, machinery, tools, apparatus, appliances, etc., necessary to carry on any trade or mechanical business, or any mechanical operation or process." (7 Century Dict. and Cyc. 4531; *Southern Bell Telephone Co.* v. *D'Alemberte,* 39 Fla. 25.) The building of this exchange outside of the village of Perry cannot be said to have been an extension or addition to the lines of appellants, but, in effect, was the building of a new equipment or facility for the use of the shareholders or members. The test whether the new construction is entirely new or is an extension of an existing plant is the determination as to whether or not it is a construction to further the same kind of business or to install a new service. (*Citizens' Telephone Co.* v. *Railroad Com. of Wisconsin,* 146 N. W. Rep. 798.) Manifestly, in this case the construction is not an extension of poles and lines owned by the farmers, but is the installation of a switchboard and necessary apparatus to make con-

nections, not only for service among its own members for themselves but to connect with commercial lines. It would result, in no small measure, in the duplication of the lines and service of the Pike County Telephone Company in a part of the same territory. This service brings it not only within the spirit but within the specific terms of the Public Utilities act.

The judgment of the circuit court must be affirmed.

*Judgment affirmed.*