South Suburban Motor Coach Company, Appellant, v. Edward J. Levin, Trading as Douglas Motor Car Company, Not Inc., Appellee.

Gen. No. 36,189.

Opinion filed February 6, 1933.

WETTEN, PEGLER & DALE, for appellant.

JOHN G. DRENNAN and M. J. SULLIVAN, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

On August 14, 1931, complainant filed its bill which averred that it was a public utility operating under a certificate of convenience and necessity issued by the Illinois commerce commission granting to complainant the right to operate busses in the transportation of persons between Chicago and Harvey and other towns in and outside of Cook county, Illinois; and that defendant without such certificate was operating a num-

ber of busses and competing with the business of complainant to its financial injury. The bill prayed that defendant might be enjoined, and upon the filing of the bill, which was duly verified, a preliminary injunction issued restraining defendant as prayed.

Defendant answered the bill denying its busses were operated in competition with those of complainant and denying that defendant conducted a public utility business subject to the jurisdiction of the Illinois commerce commission.

The cause was put at issue and referred to a master, who took the evidence and reported that the issues might be narrowed down to two propositions: (1) whether defendant was a common carrier and therefore amenable to the public utilities law of Illinois, and (2) whether defendant was in competition with complainant in such way that complainant would under the public utilities law have a right to an injunction restraining defendant from the operation of its busses. The master held that the busses of defendant were not operated in competition with those of complainant, and that it was therefore unnecessary to decide the first question. The master reported that the equities were with defendant and that the preliminary injunction should be dissolved. Objections of complainant were overruled by the master, and by order of the chancellor these stood as exceptions. The cause was heard by the chancellor upon these exceptions. The exceptions were overruled, the injunction dissolved, and the bill dismissed for want of equity. By this appeal of complainant we are called upon to review the record.

The evidence is not, in our opinion, conflicting as to material facts. Complainant is a corporation which owns and under a certificate of convenience and necessity operates about 30 busses in its own right and as successor to a number of other companies. Complain-

ant was organized August 17, 1925, for the purpose of maintaining and operating motor vehicles for the transportation of passengers and baggage for hire and for the purpose of buying, owning, selling and leasing motor coaches and all parts necessary to the maintenance and operation of motor vehicles. Complainant's predecessors obtained certificates of convenience and necessity, one of them as early as 1924. The several certificates in evidence authorized complainant to operate through a number of towns and villages between Kankakee and Chicago. Only a portion of the route, however, is in question in this suit. These certificates authorized complainant to operate its busses from Chicago Heights northerly on Halsted street past the Illinois Kennel Club race track and through the City of Harvey, to 63rd street in Chicago, thence east on 63rd street to South Park avenue, north on South Park avenue to 33rd street, west on 33rd street to Michigan avenue, north on Michigan avenue to 11th street, west on 11th street to Wabash avenue, north on Wabash avenue to 8th street, east on 8th street to Michigan avenue, south on Michigan avenue to 12th street, west on 12th street one-half block to a terminal located near the intersection of 12th street and Michigan avenue. By one of these certificates complainant was also granted the privilege of operating its busses to No. 307 Plymouth court in Chicago, which is approximately on the corner of Jackson boulevard and Plymouth court.

The race track of the Illinois Kennel Club is located about four miles south of the City of Harvey. The grounds of the club abut on Halsted street. The main entrance to the grounds is directly on Halsted street, and complainant operates its busses on Halsted street by virtue of these certificates of convenience and necessity. The track on which the dog races are run is located approximately 700 feet east of the main en-

trance to the grounds. From the main entrance to the race track there is a private roadway controlled by the club. Over the entrance on Halsted street is an illuminated sign which reads, "Illinois Kennel Club." Along the private roadway are the kennels in which the dogs are kept. Complainant obtained from the club the right to run its busses into the club grounds on this private roadway and to discharge its passengers who wished to attend the races at a point on the grounds convenient to the entrance of the race track.

In November, 1929, complainant began to operate its busses to the Sherman hotel on the corner of Clark and Randolph streets in Chicago. The Sherman hotel is five blocks north of 307 Plymouth court,—the most northern terminal named in the certificate issued to complainant. The operation of these busses north of Plymouth court to the Sherman hotel was called by complainant its "pick-up service." Such service had been furnished for about two years prior to the filing of this suit.

After the inauguration of this service complainant filed with the Illinois commerce commission schedules and tariffs from time to time showing such service. The commission received and filed these schedules and tariffs without protest.

Complainant seems to be a responsible concern employing from 50 to 60 persons. In connection with its transportation business it owns and operates repair shops at Harvey, Illinois. Its 30 busses cost $6,000 net apiece, and there is evidence tending to show that some of these were purchased for the purpose of providing service for persons desiring to attend the dog races.

Defendant Levin is the owner of four busses which he operates under the name of "Douglas Motor Car Co., Not Inc." He has received no certificate of convenience and necessity; in fact, he claims that he is not operating as a public utility.

At the beginning of the dog race season in August, 1931, he began the operation of his busses every evening from the Sherman hotel to the Illinois Kennel Club race track. These busses would be driven up to the curb in front of the hotel. Defendant would stand on the sidewalk and sell tickets to anyone who might desire to become a passenger. He charged a fare of $1 for the round trip, which included admission to the dog races, and this was the same charge made by complainant. Each of the busses held from 20 to 25 passengers. Occasionally defendant would pick up passengers en route to the race track. When he was otherwise engaged his wife would sometimes sell tickets on the sidewalk to prospective passengers, and he also had tickets on sale in the ticket agency in the lobby of the Sherman hotel.

The evidence shows that the route traversed by defendant's busses in going to the Illinois Kennel Club race track was substantially the same followed by complainant's busses. Defendant's busses started west on Randolph street to LaSalle street, thence south on LaSalle street to Jackson boulevard, east on Jackson boulevard to Michigan avenue, south on Michigan avenue to 63rd street, 63rd street to State street, south on State street to Vincennes avenue, southwest on Vincennes avenue to Halsted street, and south on Halsted street to the race track.

After the passengers alighted from the busses defendant's busses remained until the races were over and then returned to the Sherman hotel by the same route. The evidence shows that a considerable number of defendant's passengers left the busses before they got to the Sherman hotel, and they were allowed to get off at any point convenient to them, depending on the portion of the city in which they lived.

The testimony of defendant is to the effect that when the passengers presented themselves for transporta-

tion he would look them over, and if they were presentable he would sell them tickets. If they looked quiet and respectable he accepted them as passengers.

Defendant's tickets were issued in the name of the "Douglas Motor Car Co., Not Inc."; and were perforated in the center forming two sections, one good for admission to the dog races and the other for the return trip. Defendant had a sign on his busses announcing that they were to make the journey to the race track, and he was accustomed to call publicly to passersby that his bus was waiting to go back to the track. He also had a boy in the Sherman hotel who announced the waiting bus.

Upon the hearing evidence was introduced to the effect that the Illinois Central Railroad Company operated special trains from its Randolph street and Van Buren street stations, as well as other stations, to Harvey for the accommodation of patrons of the dog races; that at Harvey these trains were met by motor busses of complainant in which passengers were transported from Harvey to the race track. On the return trip the motor busses of complainant carried the passengers of the railroad company back to Harvey where they boarded trains for Chicago. This evidence was introduced for the purpose of showing that the transportation service in connection with the races furnished by the railroad and complainant was amply sufficient.

The Public Utilities Act of Illinois, Cahill's St. ch. 111a, has adopted the principle of regulated monopoly rather than unrestrained competition. The cases are all to the effect that a complainant operator of a public utility is entitled to an injunction against private corporations or individuals who without authority of law operate a similar utility which competes with and injures his business. *Springfield Gas & Electric Co. v. Springfield,* 292 Ill. 236; *Wilcox Transportation Co.*

*v. Commerce Commission,* 328 Ill. 455, 459, and *Danville, U. & C. Ry. Co. v. T. L. Clark Truck Co.,* 231 Ill. App. 339.

The master concluded that defendant did not compete with complainant, and that for that reason it was unnecessary to consider the further question of whether defendant was operating a public utility. The conclusion of the master was apparently based upon a finding that the certificate of convenience and necessity did not specifically grant authority to complainant to operate in the loop district north of 307 Plymouth court or to operate east of Halsted street at Harvey and within the property of the Kennel Club there. The master seems to have been of the opinion that in thus operating, complainant deviated from the schedule and the route authorized by the commission, since the points of arrival and departure were not within the route described in the certificate of convenience and necessity. He concluded that there could be no competition within the meaning of the Public Utilities Law under these circumstances.

This interpretation of the law does not seem to us at all reasonable, and, we think, does not conform to the intention of the legislature. That there is competition in fact here is established by the evidence. There can be no doubt that defendant transports passengers who otherwise would avail themselves of the service provided by complainant. The inevitable effect of the operation of defendant's busses in the manner described is that complainant sustains a substantial financial loss.

We think it was not the intention of the legislature to restrict complainant's field or territory to the precise and specific streets and highways named in the certificates. On the contrary, it would seem that necessarily such field or territory must extend to a reasonable distance on each side of its route and beyond its

terminal points. The rule has received recognition in the federal courts as to carriers subject to the jurisdiction of the Interstate commerce commission. *New York Dock Ry..v. Pennsylvania R. Co.,* 1 Fed. Supp. 20. Complainant contends that even if its busses did not operate north of Jackson boulevard and Plymouth court, defendant nevertheless might be restrained from operating busses from a point five blocks north of its terminus at Plymouth court, and says that if defendant's contention is correct then defendant, or any number of other concerns of like character, can operate busses from any point within the radius of a few blocks from complainant's designated route, run into it at any convenient point and follow it to any destination they may choose, as long as they drive off the route onto private property to discharge their passengers. Complainant says, and rightly, we think, that such operation would entirely nullify the very purpose of the Public Utilities Act, Cahill's St. ch. 111a.

While the commerce commission did not in any certificate specifically grant to complainant the right to operate busses from the Sherman hotel, the schedules filed with it show the intention of complainant to so operate its busses, and as a matter of fact for two years prior to the filing of the suit, it had used its busses for the purpose of picking up passengers at this and other points within a reasonable distance of its terminus at Plymouth court.

We recognize the difficulty of determining by exact definition the meaning of the word ''field'' or ''territory'' as applied to operators of public utilities, but defendant does not claim to be a utility at all, and if he did so claim complainant as the first in the field should be given an opportunity to supply any needed service before any other is given the privilege of competing with it. *Egyptian Transportation System v.*

*Louisville & N. R. Co.,* 321 Ill. 580. Any other rule would make it possible to destroy the established utility which it is the very purpose of the act, as we understand it, to protect from destructive competition. *Chicago Rys. Co. v. Commerce Commission,* 336 Ill. 51.

There is no doubt that defendant is giving the same kind of service in exactly the same territory as that which is now being given by complainant. As was said in *Choate v. Commerce Commission,* 309 Ill. 248:

"If shoestring transportation companies, with no money invested in right of way and no reserve capital to provide adequate service or to protect the public from damage, are permitted to drop in here and there and take the cream of the transportation business from the permanent transportation systems, disastrous results are inevitable."

We hold that defendant in the business which he transacts is a competitor of complainant; that he competes within the same field or territory in which complainant operates, and that upon that phase of the case complainant is entitled to relief.

Defendant, however, further contends that he is not operating as a public utility. This question the master did not deem necessary to consider because of the conclusion at which he arrived that there was no competition within the meaning of the law. Section 10 of the Public Utilities Act, Cahill's St. ch. 111a, ¶ 25 (Smith-Hurd's Ill. Rev. Stats. 1931, chap. 111 2/3, sec. 10, p. 2251) defines the public utility subject to that act, as follows:

"The term 'public utility,' when used in this Act, means and includes every corporation, company, association, joint stock company or association, firm, partnership or individual, their lessees, trustees, or receivers appointed by any court whatsoever . . . that now or hereafter:

"(a) May own, control, operate, or manage, within the State, directly or indirectly, for public use, any plant, equipment or property used or to be used for or in connection with the transportation of persons or property or the transmission of telegraph or telephone messages between points within this State; or for the production, storage, transmission, sale, delivery or furnishing of heat, cold, light, power, electricity or water; or for the conveyance of oil or gas by pipe line; or for the storage or warehousing of grain; or for the conduct of the business of a wharfinger. . . ."

The business of defendant as conducted by him is, we hold, within this definition.

We are not unaware that in order that the property owned by a person should be affected by a public use all persons must have an equal right to the service (*State Public Utilities Commission v. Noble*, 275 Ill. 121) and that it is the right of public use rather than the extent to which an instrumentality is in effective use that determines whether or not it is a public utility. However, the uncontradicted evidence shows that the public without any particular discrimination was invited to avail itself of the service provided by defendant and that the contracts for carrying these persons were not in any sense private contracts. We hold that defendant in operating his business acted as a public carrier and is therefore subject to the laws and rules regulating and governing such instrumentalities. The case of *Austin Bros. Transfer Co. v. Bloom*, 316 Ill. 435, would seem to be conclusive on this point, and decisions in other States where similar questions have arisen are to the same effect. *Motor Freight, Inc. v. Public Utilities Commission*, 125 Ohio St. 349, 181 N. E. 479; *Stoner v. Underseth*, 85 Mont. 11, 277 Pac. 437.

We think the court erred in overruling the exceptions to the report of the master; that complainant on the uncontradicted evidence was entitled to the relief

prayed; and for the reasons indicated the decree of the trial court is reversed and the cause remanded with directions to enter a permanent injunction as prayed.

*Reversed and remanded with directions.*

McSurely, P. J., and O'Connor, J., concur.